Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,373-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

TORAIL LADELL THOMAS                  Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 392,346

Honorable Michael A. Pitman, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Edward K. Bauman

TORAIL LADELL THOMAS                   Pro Se

JAMES EDWARD STEWART, SR.              Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
SAMUEL S. CRICHTON
Assistant District Attorneys

* * * * *

Before STONE, THOMPSON, and ROBINSON, JJ.

**ROBINSON, J.**

Torail Thomas was found guilty as charged by a unanimous jury verdict of second degree murder, obstruction of justice, and possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies.

For his second degree murder conviction, Thomas was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. For his felon in possession of a firearm conviction, Thomas was sentenced to 20 years at hard labor without the benefit of probation, parole, or suspension of sentence, and received a fine of $5,000. For the obstruction of justice conviction, Thomas was sentenced to 30 years at hard labor. The sentences were ordered to be served consecutively one to another.

Thomas's appellate counsel has filed a brief in compliance with *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967); *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So. 2d 241; and *State v. Benjamin*, 573 So. 2d 528 (La. App. 4 Cir. 1990). Appellate counsel has also filed a motion to withdraw as counsel of record.

For the following reasons, we grant the motion to withdraw, affirm Thomas's convictions, vacate the fine, affirm his remaining sentences, and remand with instructions.

## FACTS

Da'Twaine Jambor Broomfield was shot and killed by Torail Thomas early in the afternoon on November 10, 2022. The killing took place at Thomas's apartment located in a house on Boulevard Street in Shreveport.

On February 15, 2023, Thomas was indicted for the second degree murder of Broomfield in violation of La. R.S. 14:30.1, for possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies in violation of La. R.S. 14:95.1, and for obstruction of justice in violation of La. R.S. 14:130.1.

A jury trial commenced in June of 2024. John Gadzinski lived in the apartment directly below Thomas's apartment. Gadzinski testified that on the afternoon of the murder, he could hear a conversation upstairs. He was unable to tell if they were arguing, but there was no yelling or screaming. He heard a grouping of shots, then a pause, followed by two shots. He next heard what he thought was the sound of a body hitting the floor. As he was on the phone with a 9-1-1 operator, he saw Thomas lob something into a neighbor's yard. Thomas then came to his door and told Gadzinski that there was a dead body in his apartment.

Detective Amanda Peele is with the Shreveport Police Department. Some footage from her body camera video was played for the jury. When Peele arrived on scene, she was instructed to take Thomas into custody. She advised him of his *Miranda* rights. Thomas told Peele that he and Broomfield were smoking methamphetamine ("meth") when he got up to go to the bathroom. He heard several shots while in there, and when he exited the bathroom, he found Broomfield on the floor with gunshot wounds. Although he told Peele that someone was out to get Broomfield, he had no idea who came into his apartment and shot Broomfield. He never mentioned having to resort to self-defense to Peele.

Peele noticed that Thomas was sweating profusely, which went along with his claim of smoking meth, so she called for Shreveport Fire

2

Department personnel to assess him. Thomas was cleared to be returned to her custody.

Officers from the crime scene unit testified about what they discovered. Corporal Christopher Collins found a Taurus slide and barrel, a spring, and a magazine under Thomas's house. The lower part of the gun, which consisted of the handle and the trigger, was not found. Corporal Jonathan Varnell was the lead crime scene investigator on the case. He testified that seven 9mm rounds were found in the magazine. Three expended cartridge casings were found in the apartment.

Sgt. Monique Coleman and a detective interviewed Thomas at the police station. Parts of the interview were played for the jury. Thomas initially said he was in his apartment with Broomfield when he left the room to go to the bathroom. While in the bathroom, he heard gunshots and came out to find Broomfield dead.

Thomas changed his story as Coleman and the detective began to leave the interview room. He said Broomfield came over to get a handgun that Thomas had bought from Broomfield. Thomas explained that he bought the gun from Broomfield for $150 with the understanding that Broomfield could buy it back. When Broomfield showed up the day of his murder, Thomas told Broomfield that he would sell it back at a higher price because he wanted to make a profit. According to Thomas, Broomfield lunged at him as they discussed the gun. Thomas then fired a couple of times at Broomfield, who went to his knees. He then fired additional shots at Broomfield until he collapsed to the ground. Thomas told Coleman and the detective that he did not see a weapon on Broomfield and did not want to

find out if he had one. Thomas also said that he disassembled the firearm and then began throwing it in various places in the yard.

Thomas said during his interview that he had been smoking drugs since early that morning. However, Coleman had no evidence that Thomas was under the influence of narcotics at the time of the interview, which took place approximately 3.5 hours after the police had been called to the scene.

Coleman testified that the only evidence that Thomas had smoked meth was his own statement. Thomas indicated that he had gotten rid of a tin of narcotics. However, no meth was found under the house or on adjacent property despite several officers canvassing the area. Only synthetic marijuana was found in the apartment.

Coleman testified that Thomas did not say that he had any injuries, bruises, or scratches. She saw no physical injuries on him.

Dr. James Traylor testified regarding the autopsy results. Broomfield was struck by four projectiles. The four gunshots were determined to be in the distant range of fire, which is at least a foot and half away. Broomfield had one penetrating wound to the left abdominal sidewall, and the projectile's track was left to right, front to back, and top to bottom. He had a perforating wound to the lateral left chest wall, and the projectile's track was left to right, front to back, and bottom to top. He had a perforating wound to the anteromedial right chest, and the projectile's track was left to right, front to back, and bottom to top. He had a perforating wound to the lateral upper left arm, and the projectile's track was front to back and bottom to top. Blood was found in his abdominal cavity as well as in both pleural spaces. Meth, marijuana, and synthetic marijuana were found in Broomfield's blood.

Sergeant John Madjerick testified as an expert in fingerprint examination and analysis. In 2016, Thomas pled guilty as charged to possession with intent to distribute a Schedule 1 controlled dangerous substance. He received a five-year hard labor sentence. Madjerick testified that the fingerprints associated with that predicate conviction matched the fingerprints that he had taken in court.

After the state rested, Thomas elected to testify on his own behalf. He testified that Broomfield came to his apartment for Thomas to try some new meth that Broomfield had. They smoked the meth and some synthetic marijuana. Thomas claimed that he had also smoked meth and synthetic marijuana before Broomfield arrived. Thomas explained that synthetic marijuana, which is his drug of choice, caused him to have blackouts, hear voices, and see things. He also explained that he was diagnosed with paranoid schizophrenia in 2001, and did not take his prescribed medicines regularly.

Thomas testified that Broomfield asked if he still had the handgun, and then became upset because he did not have enough money to buy it back. Broomfield jumped up, looked to see if they were alone, grabbed a vacuum cleaner, and lunged toward Thomas. Thomas, who was lying back on a futon, pulled out the handgun that he carried. Thomas claimed that he told Broomfield to stop, but Broomfield kept lunging at him. He was scared, so he shot Broomfield, who stumbled back about two feet, went down to his knees, but then got back up. Thomas claimed that Broomfield was still lunging toward him when he fired a second shot, and then he fired a third shot because Broomfield kept approaching him after the second shot.

5

Thomas maintained that he fired three shots. After the third shot was fired, Broomfield paused before falling over to the side.

Thomas stated that he panicked after the shooting. He disassembled the gun before throwing parts of it under his building. He also claimed that he threw drugs over the fence. He then knocked on his neighbor John Gadzinski's window to tell him what had happened.

Thomas testified that he lied to the police about what occurred because he was scared, but he told the truth at the end of the interview. He maintained that he shot Broomfield because he thought his life was in danger. He was concerned that Broomfield would try to take the gun from him and kill him with it. He thought that Broomfield was being aggressive when he jumped up and came at him with the vacuum cleaner.

Thomas admitted that he is a felon and that he should not have possessed the firearm.

On June 27, 2024, the jury found Thomas guilty as charged on all counts.

Sentencing was held on July 15, 2024. For his second degree murder conviction, Thomas was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. For the felon in possession of a firearm conviction, Thomas was sentenced to 20 years at hard labor without the benefit of probation, parole, or suspension of sentence, and a fine of $5,000 was imposed. For the obstruction of justice conviction, Thomas was sentenced to 30 years at hard labor. The sentences were ordered to be served consecutively one to another.

On August 14, 2024, defense counsel filed a motion to reconsider sentence. He argued that Thomas's sentence was excessive, without mentioning a particular sentence. The motion was denied.

Thomas's appeal counsel filed an *Anders* brief in which he maintained that the record did not support any nonfrivolous claims. Appeal counsel also filed a motion to withdraw.

On April 23, 2025, this court ordered that the motion to withdraw be held in abeyance. This court notified Thomas that he had 10 days from the date of the order to file a written request to review the record. Thomas was also notified that he had 30 days from the date of the order to file an appeal brief.

On April 25, 2025, Thomas a filed a motion to file a *pro se* supplemental brief. On April 29, 2025, this court granted Thomas permission to file a *pro se* supplemental brief within 24 days from the date of receipt of the order and the receipt of the records mailed to him.

Our records reflect that the record was sent to the prison housing Thomas on April 29, 2025. The records were returned on May 8, 2025. Thomas's *pro se* brief was due on May 23, 2025. He did not file a brief.

**DISCUSSION**

Our review of this record reveals no nonfrivolous errors regarding Thomas's convictions or sentences. The evidence supporting the convictions is overwhelming. Thomas admitted to disassembling the gun and discarding its parts under the house. Thomas's status as a felon at the time of the murder was established, and he acknowledged that he should not have been in possession of a firearm. The evidence proved beyond a reasonable doubt that the homicide was not committed in self-defense. Thomas gave several

7

versions of what occurred. At first, he claimed that he was in the bathroom when the shots were fired. Next, he told the police that he shot Broomfield when he lunged him. Thomas did not know if Broomfield was armed and did not want to find out. At trial, he claimed that Broomfield was armed with a vacuum cleaner.

At sentencing, the trial court considered the relevant La. C. Cr. P. art. 894.1 factors in great detail. It also considered Thomas's criminal history. The court noted its opposition to parole for Thomas should the law ever change and Thomas become eligible for parole.

Thomas's sentence for second degree murder is the mandatory life sentence. While his sentence and fine for his felon in possession of a firearm conviction are the maximum allowed, his sentence of 30 years for obstruction of justice is significantly less than the maximum sentence of 40 years. His sentences are not excessive individually or collectively.

***Errors patent***

Thomas received a fine of $5,000 for his felon in possession of a firearm conviction. La. C. Cr. P. art. 875.1(C)(1) requires that before imposing a fine, "the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents." *See State v. Shepherd*, 56,075 (La. App. 2 Cir. 2/26/25), 408 So. 3d 375. There is nothing in the record showing that such a hearing was held or that the requirement was waived as provided in La. C. Cr. P. art. 875.1(C)(2). We remand this matter for the trial court to comply with La. C. Cr. P. art. 875(C).

8

At sentencing, the trial court imprecisely advised Thomas that he had two years from the finality of "this judgment" to assert any post-conviction relief claims. La. C. Cr. P. art. 930.8 states that no application for post-conviction relief will be considered if filed more than two years after the judgment of conviction and sentence has become final. Therefore, we advise Thomas, by way of this opinion, that no application for PCR shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under La. C. Cr. P. arts. 914 or 922. *State v. Kelly*, 52,731 (La. App. 2 Cir. 6/26/19), 277 So. 3d 855, *writ denied*, 19-01845 (La. 6/3/20), 296 So. 3d 1071.

## CONCLUSION

For the foregoing reasons, we grant the motion to withdraw as counsel of record, affirm Thomas's convictions, vacate his fine, affirm his remaining sentences, and remand this matter to the trial court to comply with the provisions of La. C. Cr. P. art. 875(C).